UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

PEGGY SPOTTS,                    )
                                 )
        Plaintiff,               )
                                 )   Civil Action No. 5:03-529-JMH
v.                               )
                                 )
UNITED STATES OF AMERICA,        )              **ORDER**
                                 )
        Defendant.               )

\*\*     \*\*     \*\*     \*\*     \*\*

In July of 2004, the Court denied Plaintiff's motion for summary judgment and granted Defendant's motion for summary judgment.  Plaintiff appealed, and the Sixth Circuit reversed and remanded this case for further proceedings.  *See Spotts v. United States*, 429 F.3d 248 (6th Cir. 2005).  The parties have filed supplemental briefs in support of their renewed summary judgment motions, and this matter is again ripe for review.

**BACKGROUND**

Quoting from this Court's prior opinion, the Sixth Circuit summarized the background as follows:

> The case *sub judice* is a quiet title action filed in the Jessamine County Circuit Court brought under 28 U.S.C. § 2410, seeking the removal of the nominee tax lien filed by the Internal Revenue Service against the real estate located at 1000 Delaney Woods Road, Nicholasville, Kentucky 40356.  The United States removed the action to this Court pursuant to 28 U.S.C. § 1444.
>
> The facts are as follows.  Charles Matich operated an asset protection program designed to reduce a person's tax liability and hide assets from the Internal Revenue Service ("IRS") and other creditors through the use of offshore bank accounts.  Matich would set up a Nevada limited liability company to receive a portion of a

client's income.  The limited liability company would
send the funds by wire to an account in the Barclay Bank,
in Grand Turk, Turks and Caicos, British West Indies.
The account was in the name of Orion Holding Company,
another company controlled by Matich.  A debit card
account was set up for each client at the TSB bank in the
Isle of Jersey.  When a client needed money, he would
notify an employee of Matich and she would wire the
needed funds to the debit card account.  The client would
then make purchases with his offshore funds by using the
debit card.  Both Grand Turk and the Isle of Jersey have
stringent bank secrecy laws and the records of bank
accounts in these places can not be reached by legal
process.

In 1990, Matich traveled to Columbus, Ohio and explained
the asset protection program to Defendant Peggy Spotts
and her ex-husband Ray Spotts.  In the summer of 1994,
Ray and Peggy Spotts traveled to California and discussed
the asset protection program with a member of an
accounting firm who allegedly confirmed Matich's
legitimacy.  Peggy and Ray Spotts became clients of
Matich and his offshore protection program in 1994.  Ray
Spotts would have commissions and other taxable income
due him sent to Proven Triumphs, LLC, the Nevada LLC set
up for Spotts by Matich as a part of the asset protection
program.  These funds were then sent to Orion Holding
Company's account at Barclay Bank.  Ray Spotts gained
access to the money through a debit card at the TSB Bank.

In the summer of 1996, the Spotts purchased a home
located at 1000 Delaney Woods Road, Nicholasville,
Kentucky.  Ray Spotts wire transferred approximately
$180,000.00 of the funds from Proven Triumphs to the
account at Barclay Bank in Grand Turk.  This $180,000,
along with $20,000.00 on loan from Orion Holding Company,
were forwarded to the settlement officer at the time of
settlement on the purchase of the home.  To disguise the
fact that the Spotts were using their own money to
purchase the home, and as a protection against creditors,
Ray and Peggy Spotts executed a note to Orion Bank and
Trust, another Grand Turk company controlled by Matich,
for $200,000.00.  This note was secured by a mortgage on
the home.  Orion Bank and Trust then forwarded the
$200,000 to the settlement officer in the guise of loan
proceeds.  The home was purchased for $272,500.00, with
the balance of the purchase price coming from Peggy.
Although the note and mortgage with Orion Bank and Trust

2

were in the names of both Ray and Peggy Spotts, the deed
was placed solely in Peggy Spotts's name to, among other
things, protect it from business creditors.

In September 1998, Peggy Spotts filed for divorce. Ray
Spotts moved out of their home and consulted a divorce
attorney who in turn advised Ray to consult a tax
attorney concerning his 1994 through 1997 tax returns and
the failure to report the funds sent offshore. In August
1999, Ray filed amended tax returns for 1994-1997 and
along with these returns Ray paid the increased tax
liabilities for 1994 and 1995. Ray failed to repay the
reported increased tax liabilities for 1996 and 1997
totaling $375,598. These additional tax liabilities were
assessed against Ray by the Service on November 8, 1999.
On November 1, 2002, the Service filed the nominee tax
lien at issue and Peggy thereupon filed this action to
quiet title.

*Spotts*, 429 F.3d at 249-50.

Following discovery, the parties filed cross-motions for
summary judgment. Defendant raised two theories: first, that
Plaintiff's ex-husband had fraudulently conveyed the house to
Plaintiff; and second, that Plaintiff held the house in a
constructive trust, with Plaintiff's ex-husband retaining the
beneficial interest. The Court rejected Plaintiff's arguments, and
rejected Defendant's fraudulent conveyance argument as well,
finding that there were genuine disputes of material fact
preventing summary judgment. The Court, however, found that
Defendant was entitled to summary judgment on the constructive
trust theory.

The Sixth Circuit reversed this Court's decision on the
constructive trust theory and remanded this action for further
proceedings. The Sixth Circuit determined that this Court erred by

3

relying on decisions from other district courts rather than applying Kentucky law.  In particular, the Sixth Circuit found that this Court failed to give proper weight to the Kentucky Supreme Court's decision in *Rakhman v. Zusstone*, 957 S.W.2d 241 (Ky. 1997), in which that court laid out the standard for determining whether a constructive trust arises out of a transfer of property from one spouse to another.  The Sixth Circuit did not address Defendant's fraudulent conveyance theory.

The Court ordered the parties to file supplemental briefs in light of the Sixth Circuit's opinion, which they have done. Defendant argues again that the conveyance was fraudulent, and that this action should be dismissed on that basis.  Plaintiff argues that under the Kentucky law cited by the Sixth Circuit, she is entitled to summary judgment in her favor.

**DISCUSSION**

**I.   The Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of

4

evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. A fact is material if its resolution will affect the outcome of the lawsuit. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001); *see Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) ("If, under the governing law, the outcome would be the same regardless of how a factual dispute is resolved, the dispute is no bar to summary judgment."). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

When determining whether there is enough evidence to overcome summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The Court must not weigh the evidence, but must decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249. Only material factual disputes will preclude summary judgment, and the dispute must be genuine, that is, the facts must be such that if proven at trial, a reasonable finder of fact could return a verdict for the nonmoving party. *See id.* at 248.

## II. The Fraudulent Conveyance Theory

In its prior opinion, this Court found that genuine disputes

5

of material fact prevented summary judgment on the fraudulent
conveyance theory. Specifically, the Court found that there were
disputes relating to Plaintiff's intent and her knowledge of her
ex-husband's fraudulent scheme. The Sixth Circuit has not
disturbed this finding. Defendant re-raises the fraudulent
conveyance argument, but no additional discovery has been
conducted, and Defendant presents no new evidence or argument.[1]
Therefore, the Court finds no reason to reverse its prior
determination that summary judgment is not appropriate under the
fraudulent conveyance theory.

## III. The Constructive Trust Theory

Defendant has conceded that under the case law cited by the
Sixth Circuit, it is not entitled to summary judgment on the
constructive trust theory. Although Plaintiff also cannot prevail
on summary judgment and quiet title at this point in light of the
remaining issues of fact relating to the fraudulent conveyance

---

[1]    Defendant again correctly notes that Plaintiff must have
paid "valuable consideration" in order to avoid a finding of a
fraudulent conveyance, regardless of intent. There is conflicting
evidence on the issue of what precisely the consideration was,
however. Among other things, the Court now has before it an
affidavit from Ray Spotts stating that he contributed what he did
to the purchase price because he owed his wife $280,000 under a
1995 contract. While that conflicts in part with other evidence,
it cannot be determined as a matter of law, reading the evidence in
the light most favorable to Plaintiff, that Plaintiff failed to
provide valuable consideration.

6

theory[2] the Court nevertheless addresses the constructive trust theory.  Plaintiff argues that under the standard announced in the Kentucky Supreme Court case cited by the Sixth Circuit, *Rakhman v. Zusstone*, 957 S.W.2d 241 (Ky. 1997), she is entitled to judgment as a matter of law on this point.  The Court does not agree.

In *Rakhman*, the Kentucky Supreme Court considered, in the context of a domestic dispute, whether certain real property was held in a constructive trust for the benefit of the partner who provided the purchase funds, though the house was deeded in the other partner's name.  Citing the Restatement (Second) of Trusts § 442, the court determined that when one spouse purchases property that is titled in the name of the other, there is a presumption that the property is a gift, and no constructive trust will be found to have arisen unless the opposing party produces evidence showing that the spouses intended for the beneficial interest to remain with the purchasing spouse.  *See Rakhman*, 957 S.W.2d at 244-45.

The presumption is rebuttable, however.  As the Sixth Circuit noted, under Kentucky law "the presumption of a settlement or a gift is rebuttable by proof of a contrary intention, and on such rebuttal a resulting trust arises."  *Spotts*, 429 F.3d at 251

---

[2]     If Defendant can show either a fraudulent conveyance or a constructive trust, Defendant wins, and the lien will continue in effect; in contrast, Plaintiff must prevail on both theories to remove the lien.

7

(quoting *O'Donnell v. O'Donnell*, 202 S.W.2d 999, 1000 (Ky. 1947)).
Defendant has the burden of producing some evidence of the
"contrary intention," but the burden of persuasion on the intent
issue remains with Plaintiff. *See* Fed. R. Evid. 302; *Rakhman*, 957
S.W.2d at 245-46 (discussing the burdens in rebutting the
presumption). Defendant has produced some evidence upon which a
reasonable finder of fact could conclude that the property was not
intended as a gift: there is evidence such as the deposition of
Matich, suggesting that Plaintiff was an active participant in the
tax avoidance scheme; Ray Spotts testified that one of the reasons
the house was titled in Plaintiff's name was to protect the
property from his creditors; Ray Spotts continued to live in the
house from the time it was purchased to the time of the divorce;
and a variety of circumstances, such as what this Court previously
described as "the assignment of the fictitious note and the release
of the 'sham' mortgage," raise questions about the legitimacy of
the entire sequence of events surrounding the purchase of the
house.

In light of that evidence, and construing for this purpose all
facts in the light most favorable to Defendant, the Court cannot
conclude that Plaintiff, who bears both the initial burden of
showing that there are no disputes of material fact and the
ultimate burden of persuasion, has shown that there was no
"contrary intention" and that she is entitled to judgment as a

8

matter of law.

CONCLUSION

Accordingly, **IT IS ORDERED:**

(1) That the renewed motions for summary judgment [Record Nos. 11 & 13] be, and the same hereby are, **DENIED.**

(2) That the parties are directed to meet, within **twenty-one (21) days** from the date of this order, and discuss a schedule for the remainder of this action.   Within **fourteen (14) days** thereafter, the parties shall submit a joint status report and agreed scheduling order, or, if they cannot agree, the parties shall each submit a status report and proposed scheduling order.

This the 1st day of August, 2006.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**

9